## *AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT*

**For the vehicles described as: 1) White Two Door, 1993 Mitsubishi Pickup Truck bearing North Carolina registration VSY-1926, VIN: JA7LS21G3PP005836; and 2) Blue Four Door, 2000 Dodge Neon bearing North Carolina registration VSD-5100, VIN: 1B3ES46CXYD692332, to include all opened and closed containers as well as any and all hidden compartments.**

EXPERIENCE

1**.**     Your affiant has been a law enforcement officer for approximately thirteen years. I am a federally deputized officer with the Drug Enforcement Administration. I have received training from the Maurice Turner Institute of Police Science and from senior law enforcement officers in narcotics investigations and drug recognition. I've also received training from the Drug Enforcement Administration on drug packaging, field testing, and recognition. I have obtained more than one hundred arrest and search warrants for narcotic violations. I have assisted in the execution of more than two hundred search warrants throughout the District of Columbia and the Metropolitan Area. During this time I have been involved in the arrest of more than five hundred individuals for narcotics and firearm violations. I have conducted more than one hundred interviews and have questioned narcotics traffickers about illicit drug trafficking. With this information I have come to know the methods and habits of persons involved in the narcotics trade. I have also used this information to pursue traffickers and firearm violators. I have spent over one hundred hours in observation posts observing the methods and habits of persons involved in selling and storing narcotics.

2.     Based upon my experience, training, and participation in narcotics investigations, I have found that narcotics traffickers and persons involved in illegal activities maintain books, records receipts, notes, ledgers, documentation, and other papers relating to the ordering, sales, and distribution of their narcotics and firearms. I know that the aforementioned items are generally maintained where persons involved in criminal activity can obtain ready access to them. I also know that these people keep their drugs and firearms inside of their homes. One reason is to prevent law enforcement officers from seizing their drugs and firearms and the other is to prevent having the proceeds of their sales from criminal activities from being robbed from inside their homes. The person involved in the narcotics

trafficking and illegal activities also keep firearms in their homes for protection from rival persons

involved in criminal activity separate from theirs.

3.  Experience has taught your affiant that conveyances, particularly vehicles, both stationary and mobile, are used to facilitate on-going criminal drug enterprises. Based on your affiant's experience in narcotics and firearms related investigations, people who sell drugs transport and store drugs in their vehicles. Your affiant has learned that mobile conveyances are commonly used to transport narcotics, firearms and other contraband. Furthermore, your affiant has knowledge that vehicles used by drug traffickers are sometimes physically and mechanically altered to manufacture secret compartments. Individuals who traffic in narcotics and firearms often purchase and register these vehicles in other people's names; such as relatives, close associates, co-conspirators and disinterested third parties. The purpose of this is to conceal items of contraband; specifically controlled substances, firearms, and U.S. currency derived from their ongoing criminal enterprises from law enforcement authorities, thus reducing their chance of incurring serious criminal liability.

4.  The facts and information set forth in this affidavit are based upon your affiant's personal knowledge, training, observations, experience and investigation, along with the findings and observations of other Investigators involved in this investigation. All observations referenced below that were not personally made by your affiant were either relayed directly to your affiant by the persons who made such observations or by those who corroborated such information. This affidavit contains information necessary to support probable cause for this application. It is not intended to include each and every fact and matter observed by your affiant or known to the government.

**Investigation**

5.  This investigation was initiated on March 10, 2006, after an undercover officer received information from a Confidential Informant, who will be referred to as "C-I" herein, that Mexican subjects traveling from New York were attempting to sell multiple kilograms of cocaine. The C-I agreed to place calls to the Mexican subjects to attempt to arrange a meeting between an undercover officer and the Mexican subjects attempting to sell the cocaine.

6.  On the morning of March 11, 2006, the undercover officer received a phone call from the

C-I, advising that the Mexicans were willing to sell the undercover officer two kilograms of cocaine. The arrangements were made between the C-I, **Antonio Molina herein referred to as Molina**, and **David Sanchez herein referred to as Sanchez**.

7.      At approximately 1200 hours, the undercover officer received another call from the C-I, advising that the Mexican subjects were driving a Blue Neon and a White Dodge pickup truck and that the C-I and the Mexican subjects would be meeting shortly. The C-I also advised the undercover officer that the Mexican subjects would be in possession of more than twenty kilograms of cocaine. The C-I stated that the meeting would take place at the Safeway parking lot, located at Georgia Avenue & Piney Branch Road, Northwest.

8.      While in route to the designated meet location, the undercover officer received another phone call from the C-I, advising that the Mexican subjects were on the Safeway lot. Subsequently MPD officers entered the area initiating surveillance. The C-I again called the undercover officer advising the undercover officer that the Mexican subjects were behind the Post Officer located at 6323 Georgia Avenue, N.W. The C-I stated that the cocaine was in the white pickup truck and also advised that the Mexican subjects were having a problem with a hidden compartment.

9.      The Affiant, acting as the case agent, deployed an unmarked vehicle into a nearby alley, where surveillance officers were able to observe and confirm that the white pickup truck and a blue Neon were parked in the rear of 6323 Georgia Avenue, Northwest. Surveilling officers were able to observe numerous Hispanic male subjects on the passenger side of the white pickup truck, with the passenger door open. The surveilling officers observed the Hispanic males each looking under the passenger seat as if they were attempting to repair something.

10.     The undercover officer received a final phone call from the C-I, who advised the undercover officer to respond to the rear of the Post Office. The undercover officer drove to the rear of the Post Office where he came in contact with the C-I and five Hispanic male subjects. The CI, **Antonio Molina, Fernando Nunez and Otoniel Orduno**, where standing on the

passenger side of the white pickup truck.  **David Sanchez and Silvia Nunez** were standing between the blue Neon and the white pickup truck, on the driver's side of the pick up truck.

11. While on the passenger side of the White pickup truck, the undercover officer engaged in a brief conversation with **Molina**, simultaneously showing **Molina** approximately $10,570 dollars in MPDC Funds.  **Molina** motioned to **Fernando Nunez**, who reached under the bench seat of the white pickup truck, retrieving a rectangular shaped object wrapped in black tape.  After observing this, the undercover officer suggested to **Molina** that he escort him (the undercover officer) back to his vehicle.  **Molina** concurred, at which time the undercover officer gave the arrest signal.

12. The Affiant along with other members of the surveillance/arrest teams moved in to effect the arrest of the Hispanic male subjects.  Five Hispanic male subjects were stopped and detained. **Fernando Nunez** was in possession of gray wiring with spliced ends.  The undercover officer, who also participated in the arrest, also positively identified **Antonio Molina (who had been shown the MPDC funds), Fernando Nunez (who retrieved the rectangular shaped object), and Otoniel Orduno (who stood watch along with David Sanchez and Silvia Nunez).**

13. Seized from the white pickup truck, beneath the bench seat, were three rectangular shaped objects wrapped in black tape.  Each rectangular shaped object contained more than 1200 grams of compressed white powdered substance that yielded a positive reaction for cocaine hydrochloride.  A North Carolina vehicle registration was also seized from the white pickup truck.  This registration matched the North Carolina tags that were displayed on the rear of the vehicle.  The white pickup truck is listed as a **1993 Two Door Mitsubishi, VIN:JA7LS21G3PP005836, Tag Number: VSY-9126**, The registered owner is listed as **Timoteo Morales Nunez,** who's current address is listed as **1646 NE 22nd Street, Winston-Salem, North Carolina.  This vehicle was seized and is currently being held at the Narcotic Special Investigation Division as evidence.**

14.	A North Carolina vehicle registration was also seized from the Blue Neon, which matched the North Carolina tags that were being displayed on the rear of the vehicle. The Blue Neon is listed as a **Blue Four Door, 2000 Dodge Neon, VIN: 1B3ES46CXYD692332, Tag Number VSD-5100.** The registered owner is listed as **Silvio Morales Nunez,** who's current address is listed as **P.O. BOX 1121 Yadkinville, North Carolina.** The C-I who was debriefed by the Affaint stated that both vehicles belong to **Silvia Morales Nunez**.

## Confidential Informant Reliability

15.	The C-I has provided, both Law Enforcement Officers of the Metropolitan Police Department and Special Agents of the Federal Bureau of Investigation with substantial amounts of corroborated and reliable information. The C-I has provided reliable information that has led to the seizure of numerous kilograms of cocaine hydrochloride and substantial amounts of cocaine base that has led to numerous arrest. The C-I's information has been corroborated by other sources of information. The C-I has never been known to provide false information.

**Vehicles To Be Searched**

16.     Based on the aforementioned information and your affiant's experience and training in narcotics and weapons related investigations, your affiant believes probable cause exists that there is additional contraband, namely additional drugs, weapons, books, records, receipts and other paperwork secreted inside of a **White Two Door, 1993 Mitsubishi Pickup Truck, bearing North Carolina Registration VSY-9126, VIN:JA7LS21G3PP005836** and a **Blue Four Door, 2000 Dodge Neon, bearing North Carolina Registration VSD-5100, VIN: 1B3ES46CXYD692332**. Therefore, your affiant respectfully requests a warrant be issued authorizing the seizure of the requested items secreted inside of the abovementioned vehicles.

_____
**INVESTIGATOR
STEVEN E. MANLEY
NARCOTIC SPECIAL INVESTIGATION DIVISION**

**Sworn to and subscribed before me on this____ day of March 2006**

_____
**UNITED STATES
MAGISTRATE/JUDGE**